[Civ. No. 1751.   Fourth Appellate District.—May 18, 1936.]

MYRTLE E. BUTCHER, an Incompetent Person, etc., Respondent, v. G. W. THORNHILL et al., Appellants.

Lasher B. Gallagher and Borton, Petrini & Conron for Appellants.

Ben W. McLendon and Joseph A. Ball for Respondent.

MUNDO, J., *pro tem.*—On October 14, 1934, at about 12:50 A. M. on a straight portion of Highway 99 at a point about 18 to 20 miles north of Bakersfield, California, the plaintiff Myrtle E. Butcher was riding with other persons in a Ford truck being driven in a northerly direction at a speed of approximately 20 to 25 miles per hour. The pavement was dry; there was no fog or rain. The Ford truck was at all times near the easterly edge of the pavement. It was equipped with two front headlights, a tail-light (which may or may not have been lighted) and a side mirror to give the driver a view from the rear. A canvas cover was stretched over the top of the bed of the truck on wagon bows. This cover and bedding material in the back of the truck, according to some witnesses, obscured the tail-light. The defendant, Gerald W. Thornhill, was driving a motor stage for the defendant, Pacific Greyhound Lines, Inc., north on said highway and to the rear of the Ford truck. When the stage was, according to evidence adduced by plaintiff, approximately 125 feet from the point of collision, Thornhill had edged the stage over to the left, or westerly, side of the highway as if to pass the Ford truck on its left. A car southbound on the westerly side of the highway was approaching the Ford truck and the stage at a speed of 40 to 45 miles per hour. In order to avoid a collision with the southbound car, the stage driver cut back to the right, or east, side of the highway, striking the left rear of the Ford truck with the right portion of the bumper and the right front fender of the stage, overturning the Ford truck. The left front fender and bumper of the stage also collided with the left side of the southbound car on

the left, or westerly, half of the highway, throwing the south-bound car into a ditch west of the highway.

The cause was su'mitted to a jury, which returned a verdict in favor of the plaintiff in the sum of $15,000. Upon this appeal by the defendants it is contended that the trial court committed prejudicial error in giving certain instructions and in refusing others requested by the defendants.

The first instruction complained of is: "The expression 'preponderance of evidence', as used in these instructions, does not necessarily mean the evidence given by the greatest number of witnesses, but is used to denote that evidence that has the greatest weight in convincing the minds and intelligence of the jurors. And in determining upon which side lies the preponderance of evidence in this case, you are instructed that you are not bound to decide in conformity to the declarations of any number of witnesses, which do not produce conviction in your minds, against a less number, or against a presumption or other evidence satisfying your minds. The direct evidence of one witness who is entitled to full credit is sufficient for the proof of any fact except perjury and treason."

Appellants cite the case of *People* v. *Miller*, 171 Cal. 649 [154 Pac. 468], as authority for their contention that the instruction tells the jury that in determining the preponderance of evidence on the question of whether or not the stage driver was guilty of negligence they are not bound to decide in conformity to the declarations of any number of witnesses unless that number of witnesses produces conviction in the minds of the jurors.

It is claimed that in civil cases the issue does not have to be established to the point where the evidence produces conviction in the minds of the jurors; it is only necessary that the evidence on the one side outweigh or preponderate over the evidence opposed to it. In other words there may be a preponderance of evidence and yet the jury be not satisfied and convinced in their minds that a party was or was not negligent. "It is one thing," they argue, "to say that the plaintiff must produce evidence which is more convincing than that of the defendant but it is another thing to say that the defendant must produce some evidence for the purpose of actually convincing the mind and intelligence of the jurors."

In *Lawrence* v. *Goodwill,* 44 Cal. App. 440 [186 Pac. 781, 785], the following instruction was given:

" 'By the preponderance of evidence is meant greater and superior weight of evidence which satisfies your mind. By a preponderance of evidence is not necessarily meant a greater number of witnesses, but if the plaintiff has proven the material allegations of his complaint by such evidence as satisfies and produces conviction in the minds of the jury, then he may be said to have proven his case by a preponderance of evidence. When you are satisfied that the truth lies with a single witness or with any number, you are justified in returning a verdict in accordance therewith. This is what is meant by a preponderance of proof. It is that character or measure of evidence which carries conviction to your minds.' "

It was there contended that the instruction was very much similar to an instruction which was given in *People* v. *Miller, supra.* The instruction in the Miller case defined preponderance of evidence as follows: "Preponderance of the evidence means that degree of evidence which proves to a moral certainty, or, in other words, that degree of proof that produces conviction in an unprejudiced mind, regardless of the number of witnesses from whom it proceeds." The court in the Lawrence case held the two instructions to be dissimilar, yet while both incorrectly stated the rule, the instruction in the Lawrence case was much less vulnerable than the one considered and condemned in the Miller case. Justice Hart, who wrote the opinion, says, after showing the difference between the two cases: "But in this case the instruction does say that by 'preponderance of evidence' is meant 'the greater and superior weight of evidence', and that superior or greater weight is not to be tested or determined by the fact that the greater number of witnesses may be found on one side, but such *weight* of the evidence as 'satisfies your minds'. In other words, that language of the instruction might justly be construed to mean (and we cannot say that the jury did not so understand it, since there was not given, as was necessarily done in the Miller case, an instruction on the degree of proof essential to a conviction in a criminal case) that the jury must be satisfied or of the conviction from the evidence, not that the truth was on the side of the party holding the laboring oar, but that the greater *weight* of the evidence was

on his side. Besides the foregoing observations relative to the point in hand, we may also consider that, at the request of the plaintiff, the court instructed the jury upon the degree of the burden resting upon him as follows: 'In civil cases the affirmative of the issue must be proven; the affirmative being upon the plaintiff, upon him therefore rests the burden of proof and he must establish his case by a preponderance of the evidence; that is to say, by the greater weight of the evidence.' This is a correct abstract statement of the rule, and, considered with that portion of the criticised instruction that the weight of the evidence is not alone or necessarily determinable according to the greater number of witnesses on the one side or the other, it must be said that the jury, assuming, as we must, that they were men of ordinarily fair intelligence, must thus have been made to understand that the rule as to the preponderance of the evidence as applied to civil cases does not measure up to the greater requirements of the rule in criminal cases as to the degree of proof which will alone justify a conviction. Thus it will readily be perceived that the situation here with respect to the instructions now in question is altogether different from that which existed in the case of *People* v. *Miller, supra.* Furthermore, while it might be that a verdict for the plaintiff might be upheld on appeal under the rule by which the appellate courts are always to be guided in considering questions of fact, still the evidence appears clearly to justify the verdict here. There is nothing in the character of the evidence on its face which justifies us in holding otherwise. Hence, we cannot say that, even with the imperfections of the criticised instruction, the plaintiff was prejudiced by it. In fact, we find a situation here where we are precluded from declaring, after a full and careful review of the entire record, including the evidence, that a miscarriage of justice resulted from the giving of the instruction complained of. (Const., art. VI, sec. 4½.)'' We have quoted at length from the opinion of Justice Hart in the Lawrence case for the reason that his opinion is particularly applicable to the facts of the present case. The instruction here complained of falls short of stating the rule correctly, but in the light of other instructions which were given by the court and which stressed the preponderance of the evidence as evidence ''having the greatest weight'' we say in the language of Justice Hart, that the instructions considered as a

whole "might justly be construed to mean . . . that the jury must be satisfied or of the conviction from the evidence, not that the truth was on the side of the party holding the laboring oar, but that the greater weight of the evidence was on his side."

■ Appellants next complain that the court instructed the jury: "If one fails to see what he would have seen by the exercise of ordinary care, a conclusion of negligence is warranted." They say that if the plaintiff was entitled to this instruction the court should also have given an instruction which would tell the jury specifically that it could not find that the defendant Thornhill was guilty of negligence because he failed to see the truck in time to avoid a collision with it unless the plaintiff produced evidence showing that an ordinarily prudent person situated in the same position as Thornhill was situated could and would have seen the vehicle upon which the plaintiff was riding in sufficient time to have avoided a collision with it. Such an instruction was offered but the court refused to give it.

The facts disclosed by the record are sufficient upon which the jury could have a belief that in the exercise of ordinary care the defendant Thornhill should have seen the truck. The court, therefore, did not err in giving such an instruction. The instruction which was refused pertains to the plaintiff's burden of proving negligence on the part of the defendant Thornhill. Not only was this proffered instruction improper, but the matter it purported to cover was amply covered by other instructions, and therefore the court's refusal to give it was not error.

■ Instruction number 10, given at the request of the plaintiff, is criticised as being unwarranted by the evidence. The instruction is:

"Subdivision (a) of section 127, California Vehicle Act, provides that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and the condition of the highway."

It was a proper instruction, for the evidence clearly entitled the jury to infer that the driver of the stage was following the truck more closely than was reasonable and prudent.

■ Instruction number 13, given at the request of the plaintiff, is as follows:

"You are instructed that it is part of the duty of the operator of a motor vehicle to keep his or her machine always under control so as to avoid collision with other persons using the highway with ordinary care and prudence. The operator would have no right to assume that the road is clear but under all circumstances and at all times must be vigilant and anticipate and expect the presence of others."

Appellants contend that this instruction is erroneous because it makes the driver of a motor vehicle absolutely liable in the event he does not have his machine under such control as will enable him to avoid a collision with another vehicle on the highway. They also complain that the instruction practically deprived them of their entire defense of no negligence on the part of the driver. They say that the court in effect told the jury that Thornhill would have no right to assume that the road was clear but under all circumstances it was the duty of Thornhill to anticipate and expect the presence of others on the highway, even the presence of vehicles without lights.

In criticising this instruction appellants assume that it was an admitted fact that the Ford truck was unlighted. That question, however, was disputed, and it was a matter for the jury to decide. The instruction specifically refers to "other persons using the highway with ordinary care and prudence". Under the evidence the jury had the right to assume that the Ford truck was being driven with ordinary care. The driver of the stage was bound to anticipate that he may meet other vehicles at any point on the highway, and it was incumbent upon him, in order to avoid a charge of negligence, to keep a proper lookout for them and to keep his machine under such control as would enable him to avoid a collision with other vehicles using proper care and caution, and if the situation requires he must slow up and stop. (*Reaugh* ·v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125].) In giving this instruction the court stated a recognized principle of law, and it left to the jury the determination of the question of fact whether the conduct of the parties fell within the contemplation of such principle.

It was said in *Meyers* v. *Bradford,* 54 Cal. App. 157 [201 Pac. 471], in which an instruction similar to the one here was given, that such an instruction demands the proper attitude of an operator of a motor vehicle.

"It suggests a fundamental principle that must be observed in order to avoid illegal injury to another. The basis of the instruction is that in the enjoyment of a common right the participant must exercise constant care that the correlative right of others may not be unnecessarily impaired or destroyed. The highways are, of course, established and maintained at public expense for the use and benefit, for lawful purposes, of all the citizens, and it cannot be claimed that the drivers of automobiles have any special right or privilege in the use or enjoyment thereof. The law indeed imposes upon them a degree of care commensurate with the peculiar hazard attending the operation of these modern vehicles." (*Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066]; *Hine* v. *Leppard,* 5 Cal. App. (2d) 154 [42 Pac. (2d) 389, 43 Pac. (2d) 595].)

██ Appellants offered instruction number 14. After certain modifications by the court, it was given to the jury as follows:

"A person driving a motor vehicle upon a public highway and in the exercise of ordinary care had the right to presume that those using the highway were obeying the law. The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable grounds to think otherwise, it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty by such other person."

Appellants insist that the modification of their instruction by the court was prejudicial error and that the giving of the instruction as modified results in a conflict between instructions 13 and 14.

All that the modification amounted to was a change from specific to general reference to facts which were covered by the abstract propositions of law contained in the instruction, and it cannot be said that the meaning of the instruction was changed. The court instructed the jury practically as requested by appellants.

██ The conflict, according to appellants, is in the court "stating in one breath that the driver of the stage had a right to presume that every other person will perform his duty and obey the law and that in the absence of reasonable grounds to think otherwise it is not negligence to assume

that he is not exposed to danger which can come to him only from violation of law or duty by such other person and immediately prior thereto the court told the jury that under no circumstances would Thornhill have the right to assume that there were no vehicles on the road ahead of him even though there were no tail lights on the vehicles."

Both instructions were warranted by the evidence and they are not in conflict. Thornhill had a right to assume that he was not exposed to danger which could only come from a violation of law or duty such as the driving of a vehicle without a tail-light, yet, on the other hand, he was required to keep his car under control so as to avoid collision with others using the highway with ordinary care and caution. It is possible that even in the exercise of usual and ordinary care and without a violation of law or duty a tail-light may become extinguished. If the jury believed the testimony of Edith Butcher, Simon Wilson and James Wilson that they had heard the horn of the stage shortly before the collision, and had believed the testimony of Melville and Meiss that the stage pulled out to go around the Ford truck, and had believed the testimony of the driver of the car in which plaintiff was riding, Simon Wilson, and his brother James, to the effect that the tail-light was burning when they last looked at it around two or three miles out of Bakersfield, the jury might have concluded that it was burning at the time of the accident, or that the driver of the Ford was not guilty of negligence even though the light was out when the collision occurred; and at the same time the jury could have concluded that the driver of the stage did not operate the stage with ordinary care and caution. It was said in *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 Pac. 675], that "it cannot be the intention of the law that a watchman must be maintained over the rear light to observe whether it is constantly burning. . . . If one drives a motor vehicle in the night-time when he knows, or in the exercise of ordinary care ought to know, that the tail light is not burning, he is guilty of negligence. While ignorance of the law is no excuse, ignorance of the fact, where ordinary care has been exercised, is a sufficient excuse." (*Nelson* v. *Signal Oil & Gas Co.*, 10 Cal. App. (2d) 448 [51 Pac. (2d) 885]; *Hine* v. *Leppard, supra.*)

Appellants next complain that the court refused to give their proposed instructions which were to the effect that

there was no duty on the part of Thornhill to anticipate that there would be on the highway in front of him any vehicle without a lighted tail-light as required by law, and that he was entitled to assume the opposite to be true. These instructions were properly refused since the essential matters were covered by other instructions. At any event it was one thing to say that a driver is not required to anticipate that others will drive on the highway "in violation of law or duty", but to say that a driver is not required to be vigilant and is not required to anticipate and expect the presence of others on the highway, who, though exercising ordinary care, may not have a tail-light burning, would be an unreasonable extension of the rule.

Finally, appellants complain because the court refused to give the following instruction:

"I instruct you that it is a presumption of law that the defendant Thornhill was operating the Pacific Greyhound bus at the time and place involved with ordinary care and skill and at a careful and prudent speed, not greater than was reasonable and proper, having due regard to the traffic, surface and width of the highway, and that he was not operating the bus at such a speed or in such a manner as to endanger the life, limb or property of plaintiffs or any person, and that he was operating the bus in a lawful manner and unless this presumption has been controverted by other evidence, direct or indirect, you are bound to find according to the presumption."

A similar instruction was refused in *Paulsen* v. *McDuffie,* 4 Cal. (2d) 111 [47 Pac. (2d) 709], and we believe it was properly refused here. The circumstances are practically identical with respect to reasons for not giving such an instruction. The court in the Paulsen case says:

"In the present action the plaintiff was not only alive but was called as a witness and testified fully as to all of his actions just prior to and at the time of his injury. Other witnesses observed plaintiff and gave in detail a complete account of the whole affair which resulted in plaintiff's injury. It is difficult to see how there was any place for a presumption as to the plaintiff's conduct. What he did on that occasion was entirely covered by the evidence in the case, and there was neither necessity nor reason for indulging in any

presumption upon that subject. That instruction had no place in this case and should not have been given.''

On the whole the instructions were full and fair and were just to both sides.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 16, 1936.