## STATE OF CONNECTICUT *v.* JANNETTE RODRIGUEZ-ROMAN
### (SC 18348)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued October 27, 2009—officially released June 22, 2010

*David V. DeRosa*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *John H. Malone*, senior assistant state's attorney, for the appellee (state).

ZARELLA, J. The defendant, Jannette Rodriguez-Roman, appeals[1] from the judgment of conviction, rendered after a jury trial, of two counts of racketeering, each involving seven incidents in which she allegedly procured driver's licenses for illegal immigrants, in violation of the Corrupt Organizations and Racketeering Activity Act (CORA), General Statutes §§ 53-394 (a) (9) and (10) and 53-395 (b) (counts one and twenty-four); eight counts of bribery in violation of General Statutes § 53a-147 (a) (counts two through nine); seven counts of bribe receiving in violation of General Statutes § 53a-148 (a) (counts ten through sixteen); seven counts of conspiracy to commit bribe receiving in violation of General Statutes §§ 53a-48 (a) and 53a-148 (a) (counts seventeen through twenty-three); seven counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1) and (3) (counts twenty-five through thirty-one); and seven counts of conspiracy to commit forgery in the second degree in violation of §§ 53a-48 (a) and 53a-139 (a) (1) and (3) (counts thirty-two through thirty-eight).[2] On appeal, the defendant claims that: (1) the evidence was insufficient to support the jury's verdict of guilty on the two racketeering counts because there was no proof of an " '[e]nterprise,' " as required under § 53-394 (c); (2) to the extent that the state alleges that the department of motor vehicles (department) constituted an enterprise under § 53-394 (c), the statutory scheme is unconstitutionally vague; (3) even if the evidence was sufficient to support the convictions on the two racketeering counts, the trial court improperly failed to instruct the jury on the essential element of

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Although the original charges were filed on October 18, 2003, the operative complaint is the state's substitute information dated December 11, 2006.

an enterprise, which requires proof that the defendant's activities extended beyond those inherent in the pattern of criminal activity; and (4) the evidence was insufficient to support the bribery convictions under the theory of vicarious liability enunciated in *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). The state responds that the evidence was sufficient to support the jury's verdict of guilty on the racketeering counts, CORA is not unconstitutionally vague as applied to the defendant, the trial court's instructions to the jury were proper and the evidence presented at trial was sufficient to support the jury's verdict on the bribery counts. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the years 2003 and 2004, while the defendant was employed in the licensing division of the department's Bridgeport office, she participated in a scheme with Hector R. Portillo, who was not a department employee, to issue fraudulent driver's licenses to illegal immigrants. Portillo testified as a witness for the prosecution[3] that he had met the defendant while he was working at his daughter's barbershop, and that he and the defendant had instituted the scheme after she had told him that if he knew anyone who needed a driver's license she could help them get one for $2500 to $3000. Thereafter, a customer asked Portillo if he knew anyone who could obtain fraudulent driver's licenses and Portillo said that he did. The customer told other people and "word got around."

Portillo testified that, upon being approached to obtain a fraudulent license, he would provide the "client" with a driver's license application that he had obtained from the defendant and would assist the client

---

[3] Portillo testified that he intended to plead guilty to his role in the crimes charged against the defendant.

in completing the form. After the form was completed, Portillo would transport the client to the department's Bridgeport office or meet the client in the office parking lot or at a nearby fast-food restaurant. Using his cellular telephone, Portillo would call the defendant and tell her that he was about to send the client into the office. After describing the client to the defendant and completing the call, Portillo would describe the defendant to the client. He also would give the client a small green ticket allowing the client, once inside the office, to advance to the head of the line.

Supplied with these materials, the client would enter the office and wait in line to be summoned by the defendant. The defendant would review the client's application and issue a driver's license without demanding the requisite forms of valid identification, and without subjecting the client to the requisite vision test, written test or road test. After leaving the office, the client would pay Portillo $2500 to $3000 for the issuance of the license. Portillo would meet with the defendant after work and give her the money. The defendant would take approximately $2000 from each transaction and return the rest to Portillo. Portillo testified that the defendant was the only person from the department who participated in the scheme, which ended when the defendant was transferred to another office.

On October 18, 2003, the defendant was arrested and charged with thirty-eight counts of racketeering, bribery, bribe receiving, conspiracy to commit bribe receiving, forgery in the second degree and conspiracy to commit forgery in the second degree. Trial commenced on December 12, 2006. In addition to Portillo, ten individuals who had obtained fraudulent licenses testified that their licenses had been issued by the defendant or someone who looked like the defendant. Nine of the ten individuals further testified that Portillo had facili-

tated the scheme, and one individual testified that he had approached the defendant directly after learning about the scheme. Evidence in the form of department records and time sheets, as well as Portillo's cellular telephone records, was introduced to corroborate Portillo's account, as was the testimony of investigating police officers and department officials. On December 21, 2006, the jury returned verdicts of guilty on all thirty-eight counts. After sentencing the defendant to consecutive terms for racketeering and bribery on the first two counts, the court sentenced the defendant on the remaining thirty-six counts and ordered the sentences on those counts to run concurrently with the sentence on count one, for a total effective sentence of twenty years, execution suspended after ten years, and five years probation. This appeal followed.

I

The defendant claimed in her initial brief to this court that the evidence was insufficient to support the jury's verdict of guilty on the two racketeering counts because there was no proof of an enterprise under § 53-394 (c). The defendant claimed that the word enterprise, as used in § 53-394 (c), specifically excludes a partnership like the one she had with Portillo, and, therefore, the conspiracy between them was not a violation of CORA. The state responded that the defendant had misread the charges against her and that she had not been charged with a violation of § 53-395 (c), but, rather, with a violation of § 53-395 (b). The state also contended that the evidence presented was more than sufficient to support the defendant's conviction of racketeering under § 53-395 (b). In her reply brief, the defendant acknowledges her mistake as to the statutory basis for the racketeering charges but argues that, even under § 53-395 (b), there must be proof of an enterprise, regardless of the fact that the portion of the statute

under which she was charged[4] makes no reference to an enterprise. We agree with the state.

Although the defendant's claim was not preserved at trial, it is entitled to review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5] because "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding.*" (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 519, 958 A.2d 731 (2008).

In reviewing an evidentiary insufficiency claim, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established

[4] General Statutes § 53-395 (b) provides: "It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to receive anything of value or to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property." Counts one and twenty-four of the substitute information charged that the defendant, "through a pattern of racketeering activity, received items of value, to wit, money," in violation of § 53-395 (b). The portion of § 53-395 (b) under which the defendant was charged in counts one and twenty-four thus makes no reference to an enterprise. Accordingly, all future references in this opinion to § 53-395 (b) will be to the portion of the statute under which the defendant was charged, unless otherwise noted.

[5] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 325, 977 A.2d 209 (2009).

guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 520.

The defendant acknowledges in her reply brief that she was charged in the racketeering counts with violations of CORA under § 53-395 (b), which makes no reference to an enterprise, and that she was not charged under § 53-395 (c), which makes direct reference to an enterprise. Accordingly, she implicitly concedes that, to the extent that she initially claimed that there was insufficient evidence of an enterprise to convict her under § 53-395 (c), her claim has no merit. We nonetheless consider her claim that an enterprise is an essential element of § 53-395 (b) and that there was insufficient evidence upon which to convict her under that provision because the state, after identifying the defendant's mistake, addressed the issue in the context of the proper statute in its brief to this court and the defendant had the opportunity to respond in her reply brief.[6]

The defendant's claim initially requires consideration of the applicable statutes. "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes.

---

[6] It is procedurally improper to raise a new argument in a reply brief because doing so deprives the opposing party of the opportunity to respond in writing. *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 226–27, 752 A.2d 1069 (2000). In the present case, however, the state noted the error in the defendant's original brief and addressed the claim under the proper statute in its appellate brief, to which the defendant then responded in her reply brief.

If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 613–14, 974 A.2d 641 (2009). Issues of statutory construction involve questions of law over which we exercise plenary review. *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009).

A

We first consider whether the portion of § 53-395 (b) on which the two racketeering convictions are based requires proof of an enterprise. The defendant argues that proof of an enterprise is necessary, and we agree.

The two racketeering charges were brought pursuant to § 53-395 (b), which provides in relevant part: "It is unlawful for any person, through a pattern of racketeering activity . . . to receive anything of value . . . ." Section 53-394 (a) defines " '[r]acketeering activity' " as "to commit, to attempt to commit, to conspire to commit, or to intentionally aid, solicit, coerce or intimidate another person to commit any crime which, at the time of its commission, was a felony chargeable by indictment or information under the following provisions of the general statutes then applicable . . . (9) chapter 952, part X, relating to forgery and related offenses; (10) chapter 952, part XI, relating to bribery and related offenses . . . ." Subsection (e) of § 53-394 further defines " '[p]attern of racketeering activity' " as

"engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, *including a nexus to the same enterprise,* and are not isolated incidents, provided the latter or last of such incidents occurred after October 1, 1982, and within five years after a prior incident of racketeering activity." (Emphasis added.)

"Although punctuation is not generally considered an immutable aspect of a legislative enactment, given its unstable history; see *State* v. *Roque,* 190 Conn. 143, 152, 460 A.2d 26 (1983); see also 2A J. Sutherland, [Statutory Construction (4th Ed. Sands 1984)], § 47.15; it can be a useful tool for discerning legislative intent. *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963); *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412 (1959). Thus, where a qualifying phrase is separated from several phrases preceding it by means of a comma, one may infer that the qualifying phrase is intended to apply to all its antecedents, not only the one immediately preceding it.[7] 2A J. Sutherland,

---

[7] This principle has guided the court in prior cases; see *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 189, 592 A.2d 912 (1991); and has been recognized for more than twenty-five years by one of the leading legal commentators on statutory construction. See 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, pp. 491–92; 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2001 Rev.) § 47:33, p. 373; 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 47:33, p. 270; 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984 Rev.) § 47:33, p. 245. Specifically, § 47:33 of the seventh edition of Sutherland's treatise, which is identical in wording to the three preceding editions, first notes that referential and qualifying words refer solely to the last antecedent where no contrary intention appears. See 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, p. 487. The treatise then observes that the rule is merely "another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the qualifying word or phrase will not be restricted to its immediate antecedent." Id., pp. 490–91. The treatise further states, in an entirely new paragraph, that "[e]vidence that

supra, § 47.33." *Sanzone* v. *Board of Police Commis-*

a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Id., pp. 491–92. Given that, in the past, we have endorsed this well established principle when interpreting language that is separated from its antecedents by a comma; see *Sanzone* v. *Board of Police Commissioners*, supra, 189; and that application of the principle in the present case results in an entirely reasonable construction of § 53-394 (e), we disagree with the concurring opinion's view that the language and the structure of the statute "clearly indicate" that the state need not prove a "nexus to the same enterprise" to establish that the defendant engaged in a "pattern of racketeering activity" as charged in counts one and twenty-four of the substitute information.

To the extent the concurring opinion also argues that the word "including," as used in § 53-394 (e), should be construed as a term of enlargement rather than a term of limitation, we disagree. The concurrence notes that this court observed in *State* v. *White*, 204 Conn. 410, 423, 528 A.2d 811 (1987), that "the most likely common use of the term shall include is one of limitation"; (internal quotation marks omitted); but concludes that the qualifying phrase in § 53-394 (e) is not one of limitation because it contains the word "including," rather than the words "shall include." See footnote 4 of the concurring opinion. The concurrence thus gives no weight to the fact that we did not restrict our comments in *White* to the term "shall include," but stated that "*the word 'include'* may be considered a word of limitation as well as a word of enlargement." (Emphasis added.) *State* v. *White*, supra, 422–23; see also *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 150, 285 A.2d 352 (1971) ("We have found . . . that 'include' is primarily defined as a term of limitation. See Webster, Third New International Dictionary; Random House Dictionary. The legal dictionaries also consider the term to be one of limitation, while indicating that 'including' can be a term of enlargement."). In the present case, the qualifying phrase in § 53-394 (e), "including a nexus to the same enterprise," not only begins with the word "including," a variation on the word "include," but is separated from the preceding language by a comma. This confluence of linguistic and structural characteristics strongly suggests that the qualifying phrase was intended to modify all of its antecedents.

The reference in § 53-394 (e) to a "nexus" also must be understood in light of the language that follows. Thus, if all of the descriptive language is eliminated and the definition of a "pattern of racketeering activity" is reduced to the essential language of "engaging in at least two incidents of racketeering activity that have the same or similar . . . distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents," it is clear that the incidents of racketeering activity must, among other distinguishing characteristics, include "a nexus to the same enterprise," because they cannot be "isolated incidents . . . ." General Statutes § 53-394 (e).

*sioners,* 219 Conn. 179, 189–90, 592 A.2d 912 (1991). Applying this principle in the present case, we may infer that the qualifying phrase in § 53-394 (e), "including a nexus to the same enterprise," modifies all of the antecedent language in subsection (e) defining racketeering activity.

To the extent that any ambiguity remains, the legislative history of § 53-394 supports this interpretation. In a memorandum to the joint standing committee on the judiciary, Austin J. McGuigan, chief state's attorney, stated that "[t]he proposed [CORA] is modeled primarily after its federal counterpart, Title IX of the Organized Crime Control Act of 1970 . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1982 Sess., p. 666. McGuigan then explained that the language defining "pattern of racketeering activity . . . which is at the core of the act, limits its application only to persons whose criminal conduct forms a pattern. It thereby excludes sporadic or unconnected criminal activity. . . . While in the ordinary criminal prosecution the admissibility of evidence of other crimes is often severely limited, in the [CORA] prosecution *evidence of criminal activity related to an ongoing enterprise is not only admissible, it is essential.* The act thus provides the jury with an opportunity to see the whole picture of the criminal operation and not merely a part of it." (Emphasis added.) Id., pp. 667–68. Accordingly, although § 53-395 (b) contains no direct reference to an enterprise, any person charged with violating the act in the same manner as the defendant must have engaged in a pattern of racketeering activity, which, according to § 53-394 (e), requires that the incidents in question share "a nexus to the same enterprise . . . ." Consequently, we conclude that § 53-395 (b), as further defined and qualified in § 53-394 (e), requires proof of an enterprise.

## B

We next consider whether the defendant's self-described partnership with Portillo falls within the meaning of an enterprise, as that term is used in the statutory scheme. The defendant argues that, because the word partnership is not expressly included in the definition of enterprise set forth in § 53-394 (c), an enterprise specifically *excludes* her association with Portillo. She also claims that an enterprise under § 53-394 (c) requires a continuing relationship involving criminal activity beyond the events constituting the charged offenses, which did not exist in the present case. We disagree.

Section 53-394 (c) defines " '[e]nterprise' " as "any individual, sole proprietorship, corporation, business trust, union chartered under the laws of this state or other legal entity, or any unchartered union, association or group of individuals associated in fact although not a legal entity, and includes illicit as well as licit enterprises and governmental, as well as other entities. In determining whether any unchartered union, association or group of individuals exists, factors which may be considered as evidence of association include, but are not limited to: (1) A common name or identifying sign, symbols or colors and (2) rules of behavior for individual members."

We first conclude that, although the term partnership is absent from § 53-394 (c), a partnership qualifies as an enterprise under CORA because a partnership falls within the general category of "other" chartered legal entities named in the statute. We further conclude, however, that the relationship between the defendant and Portillo, which the defendant portrays as "a conspiracy between two persons . . . to commit a series of crimi-

nal acts,"[8] was not a partnership, or chartered legal entity, but, rather, an *unchartered* entity under the statute. The portion of the statute that describes unchartered entities is less specific and more flexible and inclusive as to the type of association that may be considered an enterprise, defining such entities as "any unchartered union, association or group of individuals associated in fact, although not a legal entity"; General Statutes § 53-394 (c); thus clearly including the defendant's association with Portillo. Accordingly, we conclude that, although the defendant and Portillo may have viewed their relationship as a partnership, it constituted an unchartered enterprise, or association in fact, under § 53-394 (c).

Insofar as the defendant further contends that an enterprise under § 53-395 (b) requires proof of an ascertainable structure separate from the pattern of racketeering activity with which she was charged under CORA, we disagree. As indicated in the preceding discussion, the definition of an "unchartered union, association or group of individuals associated in fact" in § 53-394 (c) contains no explicit provision to that effect and the language of the statute does not suggest otherwise; nor does the applicable portion of § 53-395 (b), which simply provides that "[i]t is unlawful for any person, through a pattern of racketeering activity . . . to receive anything of value . . . ." It is a well established principle of statutory interpretation that "we cannot accomplish a result that is contrary to the intent of the legislature as expressed in the [statute's] plain language.

---

[8] After acknowledging that "a conspiracy is a partnership in crime" under *Pinkerton* v. *United States*, supra, 328 U.S. 644, the defendant concedes in her brief to this court that "[t]he concept that best characterizes the defendant and . . . Portillo's relationship in issuing legal licenses to illegal immigrants is the legal concept of a 'partnership' because it was a conspiracy between two persons" and that "the only thing that was proved [by the state] was a conspiracy between two parties that is fairly characterized as a partnership . . . ."

. . . [A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 765–66, 974 A.2d 679 (2009). We therefore conclude that, under the express terms of §§ 53-394 (c) and 53-395 (b), no proof is required of an ascertainable structure separate and apart from the pattern of criminal activities with which the defendant was charged.

Our conclusion is consistent with the United States Supreme Court's recent interpretation in *Boyle* v. *United States*, 556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009), of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (c), which forbids, inter alia, "any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." In *Boyle*, the question before the court was "whether an association-in-fact enterprise . . . must have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." (Internal quotation marks omitted.) *Boyle* v. *United States*, supra, 940–41. Under the applicable RICO statute, an " 'enterprise' " includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity . . . ." 18 U.S.C. § 1961 (4).

In determining that a structure separate from that inherent in the pattern of criminal activity is not required under RICO to prove the existence of an association in fact enterprise, the court first reviewed *United States* v. *Turkette*, 452 U.S. 576, 580, 583, 101 S. Ct.

2524, 69 L. Ed. 2d 246 (1981). *Boyle* v. *United States*, supra, 556 U.S. 942–43. In *Turkette*, the court had construed such an enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct" that could be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." (Internal quotation marks omitted.) Id., 944–45, quoting *United States* v. *Turkette*, 583. The court in *Boyle* then addressed the confusion that followed *Turkette* by clarifying that proof of an association in fact enterprise requires evidence of (1) a purpose, (2) relationships among those associated with the enterprise and (3) longevity sufficient to permit the associates to pursue the purpose of the enterprise; *Boyle* v. *United States*, supra, 946; but does not require evidence of an "ascertainable" structure that exists for a purpose "[b]eyond that inherent in the pattern of racketeering activity." (Internal quotation marks omitted.) Id., 947. The court explained that the concept of an " 'ascertainable' " structure is redundant because proof that a structure exists necessarily implies that it is " 'ascertainable.' " Id. The court, citing *Turkette*, then explained that proof of the structure's existence for a purpose "[b]eyond that inherent in the pattern of racketeering activity" is required only to the extent that the enterprise is separate and distinct from the pattern of racketeering activity, a requirement that can be satisfied by evidence demonstrating that a group of persons entered into an association in fact for the common purpose of engaging in a course of conduct. Id., citing *United States* v. *Turkette*, supra, 583. The court rejected the argument that an association in fact enterprise under RICO must have structural features in addition to those that may be fairly inferred from the statutory language. *Boyle* v. *United States*, supra, 947. Thus, the requirements for proving an association in fact enter-

prise do not include a hierarchical structure, fixed roles for its members, a name, regular meetings, dues, established rules and regulations, disciplinary procedures and induction or initiation ceremonies. Id., 948.

Both CORA and RICO share a similar purpose, and there are no significant differences between their respective definitions of an unchartered association in fact enterprise. See General Statutes § 53-394 (c); 18 U.S.C. § 1961 (4). Moreover, there is nothing in CORA inconsistent with the clarification provided in *Boyle* as to the evidence required to prove an association in fact enterprise. Accordingly, we conclude that an unchartered association in fact enterprise under § 53-395 (b) does not require proof of an ascertainable structure separate from that inherent in the pattern of racketeering activity with which a defendant is charged under CORA.

C

Having determined that proof of an enterprise is required under the racketeering counts, and that such an enterprise includes an unchartered association similar to the association between the defendant and Portillo, but does not require proof of a structure distinct from the charged crimes, we further conclude that the jury reasonably could have determined that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt on both of the racketeering counts. The evidence demonstrated that the defendant and Portillo entered into an association during the years 2002 and 2003 for the purpose of issuing fraudulent licenses to illegal immigrants in exchange for a substantial fee. Indeed, given the defendant's repeated concessions on appeal that she was involved in a criminal conspiracy with Portillo to issue fraudulent licenses, the *only* reasonable conclusion that can be drawn from the evidence is that she was guilty of the charged racke-

teering violations. Accordingly, we reject the defendant's claim that there was insufficient evidence of an enterprise to convict her on the racketeering counts.

## II

The defendant next claims that, if the state should argue that the enterprise involved in the racketeering counts is the department, the statutory scheme is unconstitutionally vague in the absence of a judicial gloss that the legislature intended to require proof that the defendant participated in a pattern of criminal and racketeering activity to benefit the department. The state responds that it did not charge the defendant with engaging in a scheme of criminal and racketeering activity to benefit the department, but, rather, with engaging in a scheme with Portillo and, by implication, with the uncharged license applicants, to defraud the department and to enrich themselves. According to the state, the defendant and Portillo received cash by soliciting and accepting bribes from the uncharged, ineligible applicants, and the ineligible applicants received motor vehicle operator's licenses in return. In light of the state's contention that it did not charge the defendant with criminal and racketeering activity to benefit the department,[9] we decline to review this claim.

## III

The defendant's third claim is that, even if the evidence is sufficient to support her conviction on the CORA counts, the trial court misled the jury because it failed to instruct the jury on the essential element of an enterprise. The defendant further claims that the

---

[9] The general allegations contained in paragraph one of counts one and twenty-four of the substitute information provide in relevant part that "[the defendant], through a pattern of racketeering activity, received items of value; to wit, money," in violation of CORA. Thus, the department is not named as the recipient of any benefit stemming from the defendant's partnership with Portillo to issue fraudulent licenses.

trial court improperly failed to advise the jury that the state was required to prove that the activities of the enterprise must extend beyond the commission of the underlying criminal acts. The state responds that the defendant's claim is both unpreserved and unreviewable because it was waived by her trial counsel when he affirmatively declared that he did not object to the instructions. The state also argues that the claim lacks merit because no instruction on an enterprise was required. We conclude that the claim is reviewable and that the trial court improperly failed to instruct the jury on the essential element of an enterprise, but that the omission of such an instruction constituted harmless error. We further conclude, in accordance with part I B of this opinion, that the trial court's failure to instruct that the activities of the enterprise must be proven to extend beyond the commission of the underlying acts was not improper.

### A

The state first contends that the defendant's claim is unpreserved and unreviewable because the defendant did not object to the instructions at trial. The following facts are relevant to our resolution of this issue. The defendant did not file a written request to charge, as did the state. After the trial court completed its instructions, which the defendant did not challenge, the prosecutor noted a difference in the wording of an instruction on the conspiracy counts from the language suggested in the state's written request. Following a brief discussion, the court and the prosecutor agreed that the difference in language was not so significant as to warrant a new instruction. The court then asked counsel for the defense if he had any problem with the instruction under discussion, and counsel responded: "I would ask that the charge . . . stand as it is." The court followed with: "Anything else, sir?" to which defense counsel responded: "No, Your Honor, I don't." The defendant

concedes that she failed to preserve her jury instruction claim at trial and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.

We conclude that the record is adequate for review and that, because an improper jury instruction on an element of an offense implicates the due process rights of the defendant, it is of constitutional dimension. *State* v. *Singleton*, supra, 292 Conn. 745. Before we may review the claim under *Golding*'s third prong to determine whether a constitutional violation exists and whether it deprived the defendant of a fair trial, however, we must determine whether the defendant waived her claim when defense counsel informed the court that he had nothing else to discuss.

The claim of an improper jury instruction is unreviewable under *Golding* in two circumstances, namely, when the alleged error has been induced by the defendant; see *State* v. *Coward*, 292 Conn. 296, 305–306, 972 A.2d 691 (2009) (defendant induced error by requesting exact jury charge challenged on appeal); or when the defendant has indicated through words or other conduct that he waived the claim. See, e.g., *State* v. *Fabricatore*, 281 Conn. 469, 477, 481–82, 915 A.2d 872 (2007) (defendant waived claim where counsel accepted theory on which instruction was based in own summation, failed to object, clearly expressed satisfaction with instruction and subsequently argued instruction as given was proper).

In the present case, defense counsel generally acquiesced in the jury instructions but did not affirmatively request the instruction on the racketeering counts omitting reference to an "enterprise," nor did he otherwise induce the court to give the instruction that the defendant now claims was improper. Moreover, when counsel expressed satisfaction with the charge as given, it is clear that the instruction to which he was referring

was the conspiracy instruction, not the racketeering instruction. Accordingly, his comments fell short of the inducement or agreement necessary to constitute either invited error or waiver of the defendant's claim on appeal and we therefore conclude that the claim is reviewable under *Golding*.[10]

## B

The defendant claims that the jury charge on the racketeering counts was improper because the trial court did not instruct that the state must prove the existence of an enterprise. She specifically claims that proof of an enterprise is an essential element of the charged crimes that must be demonstrated by evidence that the activities of the enterprise extended beyond those inherent in the commission of the underlying criminal acts. The state responds that an enterprise is not an essential element of the crimes charged under § 53-395 (b) and, therefore, proof of an enterprise was not required. We conclude that, although the existence of an enterprise is an essential element of the crimes charged, the trial court's omission of such an instruction constituted harmless error. We also conclude that the trial court's failure to instruct the jury that the activities of the enterprise must be proven to extend beyond the commission of the underlying criminal acts was not improper.

The following facts are relevant to our resolution of this claim. In its charge to the jury, the trial court

---

[10] In *State* v. *Ebron*, 292 Conn. 656, 680, 975 A.2d 17 (2009), we recently held that an unpreserved jury instruction claim is reviewable under *Golding* as long as the defendant "did not actively induce the trial court to act on the challenged portion of the instruction," even if a defendant expresses satisfaction with or acquiesces in the instruction at trial. We need not reconcile, however, the apparent inconsistency between *Ebron* and other recent cases in which we stated that claims that do not involve induced error may nonetheless be waived; see, e.g., *State* v. *Fabricatore*, supra, 281 Conn. 477; because the claim in the present case was neither induced nor waived, and thus is reviewable under either standard.

instructed in relevant part: "The defendant has been charged in two counts with violating [CORA]. Section 53-395 (b) of the General Statutes, which is part of the CORA statute, provides in relevant part that it is unlawful for any person through a pattern of racketeering activity to receive anything of value. This section, in essence, makes it a crime to receive anything of value through a pattern of certain violations of law known as racketeering activity. In this case the charge [of] racketeering activity includes bribe receiving in count one and . . . forgery in the second degree in count twenty-four.

"Let me stop here and note that the word racketeering has certain implications in our society. However, use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term racketeering is used only by the legislature to describe certain violations of the law contained in this state. In order to prove that a defendant is guilty of the CORA charges contained in count one and count twenty-four the state must prove beyond a reasonable doubt each of the following elements: One, that the defendant engaged in a pattern of racketeering activity and, two, that the defendant received something—anything of value through the pattern of racketeering activity. The first element that the state must prove beyond a reasonable doubt is that the defendant wilfully engaged in a pattern of racketeering activity. Racketeering activity in relevant part . . . means to commit, to conspire to commit or to intentionally aid or solicit another person to commit any crime which at the time of its commission was a felony chargeable by information upon the following provisions of the General Statutes then applicable.

"As to count one, that is bribe receiving in violation of § 53a-148 (a), and as to count twenty-four, forgery

in the second degree, § 53a-139 (a) (1) [and] (3). As I told you, I took judicial notice of the fact that it needs no further evidence or proof [than] the agreement of counsel that these two crimes were felonies at the time of the incidents in question.

"Now a pattern of racketeering activity means engaging in at least two incidents of racketeering activity that have the same or similar purposes, result, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated instances providing that the latter . . . or last of such instances occurred after October 1, 1982, and within five years after a prior incident of racketeering activity. The incidents of racketeering activity charged relating to count one are bribery receiving and the incidents of racketeering activity related to count twenty-four [are] forgery in the second degree."

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271

Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

"If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . [A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *State* v. *Cote*, 286 Conn. 603, 626, 945 A.2d 412 (2008); *State* v. *Flowers*, 278 Conn. 533, 543–44, 898 A.2d 789 (2006).

Applying these principles in the present context, we first conclude that the trial court improperly failed to instruct the jury on the element of an enterprise. The court advised the jury that the state was required to prove only two elements under the racketeering counts, the first being "a pattern of racketeering activity" and the second being that "the defendant received something—anything of value through the pattern of racketeering activity." The court further instructed the jury that the state was required to prove, as part of the first element, that the defendant had "commit[ted]," conspired to commit or intentionally aided or solicited another person to commit at least two incidents of racketeering activity that had "the same or similar purposes, result, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated instances providing that the latter . . . or last of such instances occurred after October 1, 1982, and within five years after a prior incident of racketeering activity." The instructions on the pattern of racketeering activity, however, were insufficient to compensate for the lack of an explicit instruction on the element of an enterprise because

they raised the possibility that the defendant could have acted alone, contrary to the requirement that she act together with another, or others, as part of an association in fact.

We next consider whether the trial court's omission of such an instruction constituted harmless error. In concluding that the evidence was more than sufficient to prove that an enterprise existed, we previously have noted that the defendant does not claim that she was not involved in an association with Portillo. Rather, her claim is that her association with Portillo did not constitute an enterprise. Having previously determined, however, that the defendant's self-described partnership constituted an unchartered association in fact enterprise under CORA, we conclude that the jury's verdict would have been the same, even if the court had instructed that the prosecution was required to prove the essential element of an enterprise, because the overwhelming evidence at trial provided by Portillo and department officials supports the conclusion that the defendant and Portillo engaged in a pattern of illegal activity to issue fraudulent licenses that constituted an enterprise. See *State* v. *Cote*, supra, 286 Conn. 626 (jury instruction improperly omitting essential element from charge constitutes harmless error if reviewing court concludes beyond reasonable doubt that omitted element was uncontested and supported by overwhelming evidence, such that jury verdict would have been same absent error). Moreover, in determining that the defendant was guilty of multiple acts of conspiracy to commit bribe receiving and conspiracy to commit forgery in the second degree, which the defendant does not challenge and which required the jury to find that the defendant had entered into an agreement with another party to perform one or more overt acts in furtherance of the agreement,[11] the jury in effect concluded that the rela-

[11] In summarizing its instructions on the conspiracy to commit bribe receiving counts, the court advised in part that the state must prove beyond a

tionship between the defendant and Portillo constituted an association in fact enterprise, even though the court did not use the word enterprise in its conspiracy instruction. Accordingly, we conclude that the trial court's omission of an instruction on the element of an enterprise was harmless beyond a reasonable doubt.

Insofar as the defendant also claims that the court failed to instruct that the enterprise existed separate and apart from her activities with Portillo, we determined as a matter of law in part I B of this opinion that, although the plain language of the applicable portions of §§ 53-394 (c) and 53-395 (b) requires proof of an enterprise, the statutory scheme does not require proof that the enterprise must exist beyond that inherent in the commission of the underlying crimes. Consequently, the omission of such an instruction was not improper because it would have been error for the trial court to instruct in its charge on the racketeering counts that the activities of the enterprise must be proven to exist beyond those inherent in the underlying criminal acts.

IV

The defendant's final claim is that the evidence was insufficient to support her conviction on the bribery counts under the theory of vicarious liability enunciated in *Pinkerton* v. *United States*, supra, 328 U.S. 647–48. She specifically claims that the bribery convictions were not reasonable under *Pinkerton* in light of her convictions of bribe receiving. In the alternative, the defendant claims that the trial court's instructions mis-

---

reasonable doubt "[o]ne, that there was an agreement between the defendant and another to engage in conduct constituting the crime of bribe receiving. Two, that there was an overt act in furtherance of the subject of that agreement by one of these persons and, three, that there was an intent on the part of the defendant that conduct constituting the crime of [bribe] receiving be performed." The court later explained that the same instruction on conspiracy to commit bribe receiving should be applied to the conspiracy portion of the charge on conspiracy to commit forgery.

led the jury because they permitted the jury to convict her of bribing herself, which is a legal impossibility. The state responds that the defendant was both part of the conspiracy to bribe a department official and a receiver of bribes, and that the two roles are distinct and not inconsistent under *Pinkerton*. We decline to review these claims.

The defendant concedes that her claims of evidentiary insufficiency and improper jury instructions are unpreserved and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude, however, that both claims must fail under *Golding*'s second prong; see footnote 5 of this opinion; because the defendant has clothed what can only be described as a nonconstitutional claim in constitutional garb. See *State* v. *Romero*, 269 Conn. 481, 505, 849 A.2d 760 (2004) (declining to review nonconstitutional claim clothed in constitutional garb).

The defendant argues that the state should not have been allowed to charge her with "bribery of herself" under a *Pinkerton* theory of liability for the acts of Portillo given that she also had been charged with, and ultimately was convicted of, bribe receiving. She contends that the legislature has made a policy determination as to how bribery and bribe receiving are to be prosecuted, thus necessitating application of the *Pinkerton* doctrine to ensure that conspirators do not escape liability in bribery cases largely unnecessary. In other words, if the legislature intended participation in a conspiracy to commit bribe receiving to be prosecuted as bribery under *Pinkerton*, it would not have enacted the bribe receiving statute. She also contends that it is legally impossible to be convicted of bribing herself, as she could not have engaged in the necessary physical acts. We conclude that the defendant's arguments are not directed to the insufficiency of the evidence per se or to the propriety of the court's instructions on the

*Pinkerton* doctrine, but to the purely legal question of whether a person can be charged with, and convicted of, both bribery and bribe receiving as part of a single conspiracy under *Pinkerton*. As such, the claimed error is not of constitutional magnitude because it does not allege the violation of a fundamental right.[12] Moreover, the defendant took no action to preserve the claim at trial, such as moving for a judgment of acquittal, to set aside the verdict or for a directed verdict on the challenged bribery counts on the ground that she could not be convicted of both bribery and bribe receiving under *Pinkerton*.[13] See, e.g., *State* v. *Carr*, 172 Conn.

[12] Following oral argument, we requested supplemental briefs on the applicability of Wharton's rule to the conspiracy charges in this case. The rule provides that "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." (Internal quotation marks omitted.) *State* v. *Baker*, 195 Conn. 598, 607, 489 A.2d 1041 (1985). The rule traditionally has been applied to offenses such as adultery, incest, bigamy and duelling "that are characterized by the . . . congruence of the agreement and the completed substantive offense." *State* v. *Acklin*, 171 Conn. 105, 117, 368 A.2d 212 (1976). "[A] well-recognized exception to Wharton's rule [however] renders it inapplicable where more parties participate in the conspiracy than are required for the commission of the substantive offense." Id., 118; see also *Iannelli* v. *United States*, 420 U.S. 770, 775, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975). At least one court has applied Wharton's rule in the context of bribery. See *People* v. *Wettegel*, 98 Colo. 193, 196, 58 P.2d 179 (1935). We observed in *Acklin*, however, in reliance on *Iannelli*, that the rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." (Internal quotation marks omitted.) *State* v. *Acklin*, supra, 117, quoting *Iannelli* v. *United States*, supra, 782. We therefore conclude that, because Wharton's rule is entitled to consideration only as a judicial presumption, an unpreserved nonconstitutional claim invoking the rule does not elevate the claim to one of constitutional magnitude deserving of appellate review under *Golding*. We express no view as to the impact of Wharton's rule in this case.

[13] The defendant moved for a judgment of acquittal on all counts at the end of the state's case and on two other occasions following the jury's verdict, arguing each time that the evidence was insufficient to support convictions on all counts and that certain witnesses had been unable to identify the defendant as the person who had issued them the licenses. The court denied all three motions.

458, 467, 374 A.2d 1107 (1977) (reviewing defendant's claim regarding improper charge by state after noting that trial court had denied defendant's motion for directed verdict and motion to set aside verdict). "It is well settled that this court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . Practice Book § 60-5 . . . . For this court to . . . consider a claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citation omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 177, 982 A.2d 620 (2009). Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion NORCOTT, KATZ, VERTEFEUILLE and McLACHLAN, Js., concurred.

ROGERS, C. J., with whom PALMER, J., joins, concurring. The majority concludes in part I of its opinion that the state was required under General Statutes § 53-395 (b) of the Corrupt Organizations and Racketeering Activity Act (CORA), to prove that the defendant, Jannette Rodriguez-Roman, engaged in at least two incidents of racketeering activity that had "a nexus to the same enterprise . . . ." The majority further concludes in part III of its opinion that, although the trial court improperly failed to charge the jury on the essential element of an enterprise, the impropriety was harmless because the defendant concedes that she engaged in a pattern of illegal activity to issue fraudulent driver's licenses and, as a matter of law, this scheme constituted an enterprise.

I disagree that the state was required to prove that the defendant's racketeering activities had a nexus to the same enterprise to establish that she violated § 53-

395 (b). Rather, I would conclude that the state could establish a violation if it proved that her illegal activities had "the same or similar purposes, results, participants, victims or methods of commission or otherwise [were] interrelated by distinguishing characteristics . . . ." General Statutes § 53-394 (e). Because the defendant does not dispute that the evidence was sufficient to support a finding that she "engage[d] in a pattern of racketeering activity that was not associated with a corporate criminal entity," I would conclude that the state met its burden of proving the racketeering charges. Accordingly, I concur with parts I and III of the majority opinion.[1]

I begin with the language of the statute defining "pattern of racketeering activity . . . ."[2] Section 53-395 (b) provides: "It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to receive anything of value or to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property." Section 53-394 (e) defines " '[p]attern of racketeering activity' " as "engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents . . . ." The majority concludes that "the qualifying phrase in § 53-394 (e), 'including a nexus to the same enterprise,' modifies all of the antecedent language in subsection (e) defining racketeering activity. . . . Accordingly, although § 53-395 (b) contains no direct reference to an enterprise,[3] any

---

[1] I agree with the reasoning and results of parts II and IV of the majority opinion.

[2] The principles governing our construction of statutes are set forth in part I of the majority opinion.

[3] Contrary to the majority's statement, § 53-395 (b) does contain a direct reference to an "enterprise." See General Statutes § 53-395 (b) ("[i]t is unlawful for any person, through a pattern of racketeering activity . . . to acquire

person charged with violating the [statute] in the same manner as the defendant must have engaged in a pattern of racketeering activity, which, according to § 53-394 (e), requires that the incidents in question share 'a nexus to the same enterprise . . . .' "

I disagree. In my view, these statutes clearly and unambiguously set forth several *alternative* methods of proving a pattern of racketeering activity. Under § 53-395 (b), the state may prove that the defendant: (1) received something of value through a pattern of racketeering activity or through the collection of an unlawful debt; or (2) acquired an interest in an enterprise through a pattern of racketeering activity or through the collection of an unlawful debt. Under § 53-394 (e), a pattern of racketeering activity may be proved by establishing that the defendant engaged in at least two incidents of racketeering activity that: (1) "have the same or similar purposes, results, participants, victims *or* methods of commission"; (emphasis added); *or* (2) "otherwise are interrelated by distinguishing characteristics, *including* a nexus to the same enterprise . . . ." (Emphasis added.) Thus, in my view, the state could prove the elements of § 53-395 (b) by establishing that the defendant had received something of value through engaging in two incidents of racketeering activity that had the same purpose or participants and were not isolated incidents. Similarly, if the state could prove that the incidents were interrelated by distinguishing characteristics, it would meet its burden. I see nothing in the statutory scheme that requires the state to prove a "nexus to the same enterprise" in every case. Rather, the class of racketeering activities that have "a nexus to the same enterprise" is *included* in the larger group

. . . any interest in or control of any enterprise"). The majority presumably intended to say that the portion of the statute under which the defendant was charged, namely, the "receive anything of value" portion, does not directly require the state to prove the existence of an enterprise.

of racketeering activities that are interrelated by distinguishing characteristics.[4]

In support of its interpretation of §§ 53-394 (e) and 53-395 (b), the majority relies on the purported rule of statutory construction that, "where a qualifying phrase is separated from several phrases preceding it by means of a comma, one may infer that the qualifying phrase is intended to apply to all its antecedents, not only the one immediately preceding it." (Internal quotation marks omitted.) The latest edition of the treatise cited by the majority states, however, that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. Thus a proviso usually is construed to apply to the provision or clause immediately preceding it."[5] (Internal quotation marks omitted.) 2A N.

---

[4] This court previously has held that "the word 'include' may be considered a word of limitation as well as a word of enlargement." *State* v. *White*, 204 Conn. 410, 422–23, 528 A.2d 811 (1987). We stated in *White*, that, although the word has been defined as " 'to place, list or rate as part or component of a whole larger group, class or aggregate . . . to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate' "; id., 422; "the most likely common use of the term 'shall include' is one of limitation." Id., 423. Section 53-394 (e) does not provide that a pattern of racketeering activity "shall include" a nexus to the same enterprise and nothing in the language or structure of the statute suggests that the word "including" was intended to be a word of limitation rather than a word of enlargement. Rather, in my view, the language and structure of the statute clearly indicate that the class of racketeering activities that have "a nexus to the same enterprise" is one component of the larger group of racketeering activities that "are interrelated by distinguishing characteristics . . . ." General Statutes § 53-394 (e).

[5] The treatise also states that, "[w]*here the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections*, the word or phrase will not be restricted to its immediate antecedent." (Emphasis added.) 2A N. Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, p. 491. In that case, "[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Id. Because the sense of § 53-

Singer & J. Singer, Sutherland Statutory Construction (7th Ed. 2007) § 47:33, pp. 487–90. In the present case, this rule supports the most reasonable reading of the statute. The word nexus connotes connection; see Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining "nexus" as "1: CONNECTION, LINK . . . 2: a connected group or series"); which, in turn, connotes interrelation. It is clear to me, therefore, that the phrase "including a nexus to the same enterprise" modifies only the immediately antecedent phrase, referring to activities that "otherwise are interrelated by distinguishing characteristics . . . ." General Statutes § 53-394 (e).

In any event, even if the phrase "including a nexus to the same enterprise" also modified the phrase "two incidents of racketeering activity that *have the same or similar purposes, results, participants, victims or methods of commission*"; (emphasis added) General Statutes § 53-394 (e); that still would not mean that *all* incidents of racketeering activity must have a nexus to the same enterprise. As I have indicated, as used in § 53-394 (e), the word "including" is a word of enlargement, not a word of limitation. See footnote 4 of this concurring opinion. In other words, activities having "a nexus to the same enterprise" are *in addition* to other activities that may constitute a pattern of racketeering activity.

This court's decision in *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 149–50, 285 A.2d 352 (1971), illustrates the distinction between a limiting use of the word "include" and an enlarging use of the word. In that case, this court construed General Statutes (Rev. to 1964) § 12-264, which provides: "Gross earnings . . . shall include all income classified as operating revenues

394 (e) does not require the phrase "including a nexus to the same enterprise" to apply to all of the antecedent phrases, this rule does not apply.

by the public utilities commission in the uniform systems of accounts prescribed by said commission . . . all income classified in said uniform systems of accounts as income from merchandising, jobbing and contract work, income from nonutility operations and revenues from lease of physical property not devoted to utility operation, and receipts from the sale of residuals and other by-products obtained in connection with the production of gas, electricity or steam." (Internal quotation marks omitted.) Id., 149–50. This court concluded that the word " 'include' " was ambiguous as to whether it was a word of limitation or a word of enlargement. Id., 150. In other words, this court found it unclear whether the enumerated types of revenue were the *only* types of revenue included in "gross earnings," or whether they were merely examples of the types of revenue included in the statute. After reviewing the legislative genealogy and history of the statute, we concluded that the word " 'include' " was a word of limitation, and that the list was comprehensive. Id., 153–54.

The structure of § 53-394 (e) is entirely different, however, than the structure of § 12-264. Section 12-264 sets forth a general class—gross earnings—and then provides that that general class "shall include" each of the specifically enumerated items. The possibility that unenumerated items may also be included in the general class does not change the meaning of the word "include." Thus, the word is ambiguous in that context. In contrast, the phrase "including a nexus to the same enterprise," as used in § 53-394 (e), *necessarily* implies an antecedent general class of which the specific class of crimes having a nexus to the same enterprise is a member. Under the majority's interpretation, however, there is no such antecedent general class. Rather, the other enumerated classes, such as the class of racketeering activities that have the same victims, all are

included in the general class of "incidents of racketeering activity that have . . . a nexus to the same enterprise . . . ." General Statutes § 53-394 (e). This completely *reverses* the meaning of the word "including" and turns the statute on its head.

Moreover, the fourth edition of Black's Law Dictionary, which this court cited in *Hartford Electric Light Co.* v. *Sullivan,* supra, 161 Conn. 150, supports my interpretation of § 53-394 (e). That dictionary defines "include" as: "To confine within, hold as in an inclosure, take in, attain, shut up, contain, inclose, comprise, comprehend, embrace, involve. *Including* may, according to context, express an enlargement and have the meaning of *and* or *in addition to,* or merely specify a particular thing already included within general words theretofore used." (Emphasis in original.) Black's Law Dictionary (4th Ed. 1968). Although the majority has established that "include" *may be* understood as a word of limitation, especially when used in the phrase "shall include," it has provided no explanation, other than pointing to the existence of a perfectly innocent comma between the words "characteristics" and "including," as to why, in the context of § 53-394 (e), the word "including" is not most reasonably—indeed, necessarily—read to "express an enlargement" or to "specify a particular thing already included within the general words"; id.; "otherwise . . . interrelated by distinguishing characteristics . . . ." General Statutes § 53-394 (e). This interpretation is compelled by the grammar and structure of the statute and is bolstered by the most recent edition of Black's Law Dictionary, which defines "include" as: "To contain as a part of something. The participle *including* typically indicates a partial list <the plaintiff asserted five tort claims, including slander and libel>. . . ." (Emphasis in original.) Black's Law Dictionary (9th Ed. 2009); see also Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) (defining

"include" as "2: to take in or comprise as a part of a whole"). Finally, the majority has not cited one other instance in which the legislature has used the word "including" to mean "and must have."

The majority also states that, "if all of the descriptive language is eliminated and the definition of a 'pattern of racketeering activity' is reduced to the essential language of 'engaging in at least two incidents of racketeering activity that have the same or similar . . . distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents,' it is clear that the incidents of racketeering activity must, among other distinguishing characteristics, include 'a nexus to the same enterprise,' because they cannot be 'isolated incidents . . . .' " Footnote 7 of the majority opinion. Again, I disagree. First, the majority has not reduced the statute to its essential elements because, as I have indicated, the statute sets forth numerous *alternative* elements. Second, I see no reason why the fact that incidents of racketeering activity may not be isolated incidents necessarily means that they must have a nexus to the same enterprise. Indeed, if that were the case, the phrase "including a nexus to the same enterprise" in § 53-394 (e) would be entirely superfluous. In any event, even if the majority were correct that all incidents of racketeering that are not isolated necessarily have a nexus to the same enterprise, that still would mean only that the state is required to prove that the incidents are not isolated, not that they have a nexus to the same enterprise. Third, if the legislature had intended that all incidents constituting a pattern of racketeering activity must: (1) have the same or similar purpose, results, participants, victims or methods of commission or otherwise be interrelated by distinguishing characteristics; *and* (2) have a nexus to the same enterprise; *and* (3) not be isolated incidents, it easily could have adopted that definition.

Finally, the majority relies on the legislative history of § 53-394 (e) to support its interpretation. In the cover letter to the members of the judiciary committee forwarding the memorandum relied on by the majority, however, then Chief State's Attorney Austin J. McGuigan stated that, "in order to sustain [a] prosecution [under CORA], the acts must be related to each other *or* to an ongoing enterprise so as to form the pattern of racketeering activity." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1982 Sess., p. 661. In addition, the memorandum itself states that "[a CORA] prosecution can be maintained when a person commits two predicate racketeering acts . . . . These predicate acts, however, cannot be isolated or unconnected, but must somehow be related to each other *or* to the same ongoing enterprise so as to form a 'pattern of racketeering activity.' " (Emphasis added.) Id., p. 666. It is clear to me, therefore, that McGuigan recognized that the proposed legislation did not require proof of an enterprise in every case and that the statement relied on by the majority, that "evidence of criminal activity related to an ongoing enterprise is not only admissible, it is essential" to a CORA prosecution; id., p. 668; was merely loosely worded shorthand for the notion that the acts of racketeering cannot be isolated.

The majority relies heavily on cases construing 18 U.S.C. § 1962 in support of its interpretation of the word "enterprise" as used in § 53-394 (e). See *Boyle* v. *United States*, 556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009); *United States* v. *Turkette*, 452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). Section 1962 (c) of title 18 of the United States Code provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity or collection of unlawful debt." Thus, unlike our statutes, proof of the existence of an enterprise clearly is required by the federal statute. Accordingly, although the majority may be correct that the meaning of the word enterprise as used in our statutes is the same as used in the federal statute, I see no need to address that question because the meaning of the word "enterprise" as used in § 53-395 (b) is not at issue here.

The defendant does not dispute that the evidence was sufficient to support the jury's conclusion that she received something of value through engaging in at least two incidents of racketeering activity, namely, receiving bribes in violation of General Statutes § 53a-148; see General Statutes § 53-394 (a) (10); and that she did so with the participation of the same person, namely, Hector R. Portillo. Because I disagree with the majority's conclusions in part I of its opinion that proof of an enterprise is an essential element of § 53-395 (b), I also disagree with part III of its opinion that the trial court improperly failed to instruct the jury on that essential element, but that the impropriety was harmless because the evidence of an enterprise was overwhelming and uncontested. Rather, I would conclude that the state met its burden of proving the elements of § 53-395 (b), regardless of whether it established that the incidents of racketeering activity had a nexus to the same enterprise. I therefore concur with parts I and III of the majority opinion.