******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM GEMMELL
(AC 34788)

Gruendel, Lavine and West, Js.

*Argued April 10—officially released July 15, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, geographical area number twenty, Dennis, J.)

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Justina Moore*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, William Gemmell, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), home invasion in violation of General Statutes § 53a-100aa (a) (1), brandishing a facsimile firearm in a threatening manner in violation of General Statutes § 53-206c (c), criminal violation of a protective order in violation of General Statutes § 53a-223, unlawful restraint in the second degree in violation of General Statutes § 53a-96, and interfering with an emergency call in violation of General Statutes § 53a-183b. The defendant claims that (1) his arrest, detention, and punishment were unwarranted and, thus, violated his rights under the state and federal constitutions, (2) there was insufficient evidence to support his conviction, (3) the court improperly instructed the jury with respect to home invasion, and (4) the court abused its discretion by denying his motion for a judgment of acquittal and his motion to dismiss. We affirm the judgment of the trial court.

The defendant was tried before a jury in December, 2011. The jury reasonably could have found the following facts beyond a reasonable doubt. For approximately fifteen years prior to 2008, the defendant and Kimberly Planeta had a romantic relationship and lived together in an apartment at 45 Maple Street in Norwalk. Their relationship ended in 2008 when the defendant moved to Texas. After the defendant moved, he no longer had a key to the apartment.

On April 26, 2010, in an unrelated matter, the court, *Hudock, J.*, entered an order of protection against the defendant and in favor of Planeta. Pursuant to that protective order, the defendant was not to assault, threaten, abuse, harass, follow, interfere with, or stalk Planeta. He also was to stay 100 yards away from her, her home, and wherever she resided. He was not to have contact of any kind with Planeta, including written, electronic or telephone communication. Nor was he to have contact with Planeta's home, workplace or others with whom such contact would likely cause annoyance or alarm to Planeta. The defendant was present in the courtroom at the time the court entered the protective order and stated that he understood the conditions of the protective order.

On the evening of April 29, 2010, a surveillance camera captured the defendant surreptitiously entering 45 Maple Street (building) when an unknown person exited the building.[1] After the defendant entered the building, he stayed in a basement room adjacent to the laundry area.

On April 30, 2010, at approximately 6:30 p.m., Planeta was in the basement folding her laundry when the defendant approached her from behind and stated, "you're

going with me . . . ." The defendant walked Planeta to the elevator and told her that he needed $3500. The defendant displayed what appeared to be a gun, frightening Planeta. Planeta testified that she entered the elevator because the defendant "had the gun on me." The defendant and Planeta rode the elevator to the fourth floor where her apartment was located.

In an effort to escape from the defendant, Planeta told him that she did not want her cats to get out of the apartment. She therefore opened the door a crack and attempted to squeeze into her apartment. The defendant, however, struggled with Planeta in the hallway and eventually pushed her ahead of him into the apartment. The struggle continued inside the apartment where the defendant pushed Planeta to the floor and held her down. Planeta screamed for help. As a consequence, Planeta suffered bruises to her arm, and injuries to her lip and little finger. Planeta was terrified and asked the defendant to let her go. He refused and threatened to kill her.

When the struggle subsided, Planeta attempted to reach the door, but the defendant barricaded it by wedging a chair under the doorknob. Planeta was able to walk to a cordless telephone and dial 911. The defendant took the telephone from her before she could talk to the police dispatcher. The dispatcher called back. To prevent the defendant from discovering that she was talking to the police, Planeta pretended to be speaking with a telemarketer. Over a period of time, the defendant and Planeta spoke to the police a number of times. As a consequence of Planeta's 911 call and 911 calls from other residents of the building, several Norwalk police officers and members of the police department's special services unit came to the apartment. Officer Carl Williams served as a hostage negotiator. During the negotiations, the defendant stated that he would stop Planeta if she attempted to leave. After a one and one-half to two hour standoff, the defendant opened the apartment door and permitted the police to enter. The police frisked him and found a box cutter. The police took the defendant into custody and, thereafter, charged him with numerous crimes. After the jury found him guilty of burglary in the first degree, home invasion, brandishing a facsimile firearm in a threatening manner, criminal violation of a protective order, unlawful restraint in the second degree, and interfering with an emergency call,[2] the defendant received a total effective sentence of fifteen years incarceration, ten years of which are a mandatory minimum, followed by ten years of special parole.

I

The defendant's principal claim is that his arrest, detention, and punishment were unwarranted and violated his rights under article first, §§ 1, 8, and 9, of the constitution of Connecticut,[3] and the fifth, sixth, eighth,

and fourteenth amendments to the United States constitution. More specifically he claims that, as a matter of law, (1) he could not violate a protective order that was issued subsequent to April 30, 2010, (2) one convicted of criminal violation of a protective order may be convicted of criminal trespass, but not home invasion, (3) one may not be convicted of home invasion when the home invaded is the person's home, and (4) one may not be convicted of home invasion that merely is incidental to a criminal violation of a protective order or unlawful restraint. We do not agree with any of the defendant's claims.[4]

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Brown*, 299 Conn. 640, 646–47, 11 A.3d 663 (2011).

A

The defendant claims that his conviction of violating a protective order on April 30, 2010, violated his constitutional rights because no protective order was issued against him prior to April 30, 2010. We disagree.

The defendant claims that the only protective order against him was issued on May 3, 2010. The record in this case, however, discloses that, during Planeta's direct testimony, the state entered into evidence a certified copy of the protective order issued and signed by Judge Hudock on April 26, 2010. Moreover, the state placed into evidence a copy of the April 26, 2010 transcript of the defendant's arraignment in the unrelated matter during which Judge Hudock issued that protective order against the defendant. The April 26, 2010 protective order was the basis of the charge of criminal violation of a protective order alleged in count four of the December 1, 2011 amended long form information. The defendant's claim that his conviction of violating a protective order violated his constitutional rights fails in the face of the uncontradicted evidence presented at trial.

B

The defendant claims that his constitutional rights were violated when he was convicted of home invasion in violation of § 53a-100aa (a) (1) in addition to criminal violation of a protective order. The defendant has asserted his claim on the basis of the following statutory

language: "[I]n accordance with section 53a-107 of the Connecticut general statutes, entering or remaining in a building . . . in violation of this [protective] order constitutes criminal trespass in the first degree . . . ." See General Statutes §§ 54-1k (b) and 46b-38c (e).[5] The defendant acknowledges that one who violates a protective order may be convicted of criminal trespass in the first degree under General Statutes § 53a-107, but he contends that one who violates an order of protection may not be prosecuted for home invasion. We disagree.

The defendant's claim requires us to construe the relevant statutes. Statutory construction is a question of law and our review, therefore, is plenary. *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Miranda*, 142 Conn. App. 657, 662, 64 A.3d 1268, cert. granted on other grounds, 310 Conn. 902, 75 A.3d 29 (2013).

Both §§ 54-1k (b) and 46b-38c (e) (protective order statutes) contain the words, "in accordance with section 53a-107 of the Connecticut general statutes, entering or remaining in a building or any other premises in violation of this order constitutes criminal trespass in the first degree . . . ." Section 53a-107 provides in relevant part: "(a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person; or (2) such person enters or remains in a building or any other premises in violation of a . . . protective order issued pursuant to section 46b-38c, 54-1k . . . by the Superior Court; or (3) such person enters or remains in a building or other premises in violation of a foreign order of protection . . . that has been issued against such person . . . or (4) knowing that such person is not licensed or privileged to do so, such person enters or remains on public land after an order to leave or not to enter personally communicated to such person by an authorized official . . . ." The defendant argues that the language of § 53a-107 is

clear and unambiguous; we concur with that characterization.

Section 53a-107 requires the state to prove, in part, that personal notice to leave has been given to a person who, knowing that he is not licensed or privileged to do so, enters or remains in a building or other premises. To prove a violation under § 53a-107 (a) (1) and (4), the state must prove that an order to leave was personally communicated to the trespasser by the owner of the premises or other authorized person. Under § 53a-107 (a) (2) and (3), the state need not prove that an order to leave was communicated personally to the trespasser by the owner of the premises or an authorized representative, as an order of protection satisfies the personally communicated notice requirement. Under § 53a-107 (a) (2) and (3), an order of protection constitutes personal notice.

Section 53a-107 concerns criminal trespass only, not other conduct prohibited by an order of protection or our General Statutes. In the present case, the defendant's conduct in violation of the protective order went well beyond criminal trespass, e.g., he came within 100 yards of Planeta, he threatened her with what appeared to be a gun, and made physical contact with her. The defendant has cited no legal authority that prohibited the state from charging him with crimes in addition to criminal trespass on the basis of his criminal conduct on April 30, 2010, and we are aware of none. He merely contends that because §§ 46b-38c and 54-1k address criminal trespass and do not speak to home invasion, he cannot be charged with home invasion. Although the protective order statutes satisfy the personal notice element of § 53a-107, the language of the protective order statutes is not limiting with respect to other crimes. In other words, nothing in them prohibits the state from bringing additional charges, including home invasion, for criminal acts. "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. . . . Absent ambiguity, the courts cannot read into statutes, by construction, provisions that are not clearly stated." (Citation omitted; internal quotation marks omitted.) *Battersby* v. *Battersby*, 218 Conn. 467, 470, 590 A.2d 427 (1991). We conclude that the defendant's constitutional rights were not violated when he was convicted of home invasion in addition to criminal violation of the protective order.

C

The defendant's next claim is that his conviction of home invasion was unwarranted because the home he invaded was his own. The defendant contends that because he was homeless and some of his possessions were found in the laundry room of the building, the building was his home.[6] The defendant's claim lacks merit.

Count two of the amended long form information alleges that "on or about April 30, 2010, at approximately 7:08 p.m. in the area of Maple Street, the said [defendant] unlawfully entered a dwelling, with intent to commit a crime therein, while a person other than a participant in the crime was actually present in such dwelling, to wit . . . Planeta, and, in the course of committing the offense he attempted to commit a felony against another person who was actually present in such dwelling . . . ."

Section 53a-100aa codifies the crime of home invasion and provides in relevant part: "(a) A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and in the course of committing the offense: (1) Acting either alone or with one or more persons, such person or another participant in the crime commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . ." The statute provides that the crime of home invasion is committed, in part, when a "person enters or remains unlawfully in a *dwelling* . . . ." (Emphasis added.) General Statutes § 53a-100aa (a). The "enters" element of the crime does not contain the word home.

Moreover, dwelling is a defined term under our law. "The following definitions are applicable to this part . . . 'dwelling' means a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present . . . ." General Statutes § 53a-100 (a) (2). The defendant's claim admits that he was not living in Planeta's apartment. To the extent that his claim is predicated on his belief that he was living in the basement of the building, count two of the information charged him with unlawfully entering Planeta's dwelling.

For the foregoing reasons, we conclude that the defendant was not wrongly convicted of home invasion because the home he invaded was his own, as he contends. The jury found beyond a reasonable doubt that he unlawfully entered Planeta's apartment or dwelling. Moreover, contrary to his claims, the defendant's conviction in no way violates the state's policy toward the homeless or his right to privacy; it was predicated on his criminal behavior. See footnote 6 of the opinion.

D

The defendant claims that his conviction of home invasion violated his constitutional rights because his criminal conduct in Planeta's dwelling merely was incidental to the violation of the protective order or unlawful restraint. He contends that his claim is controlled by our Supreme Court's holding in *State* v. *Salamon*,

287 Conn. 509, 949 A.2d 1092 (2008). We disagree that *Salamon* provides guidance, much less controls our analysis.

In *Salamon*, our Supreme Court addressed a more narrow issue predicated on that court's prior interpretations of our *kidnapping* statutes. Id., 531. The court found the intent language of the statutes to be ambiguous. Id., 534. It stated that "in accordance with the statutory definitions of the terms abduct and restrain, our decisions have established that a defendant may be convicted of kidnapping upon proof that he restrained a victim when that restraint is accompanied by the requisite intent. Those previous decisions, however, have not explored the parameters of that intent, in particular, how the intent to prevent [a victim's] liberation . . . that is, the intent necessary to establish an abduction, differs from the intent to interfere substantially with [a victim's] liberty . . . that is, the intent necessary to establish a restraint." (Citations omitted; internal quotation marks omitted.) Id.

Our Supreme Court provided a judicial gloss to differentiate the intent necessary to commit kidnapping from the intent necessary to commit unlawful restraint. The court stated that "[o]ur legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542. The court's holding was grounded on an analysis of the kidnapping statutes and did not establish a statutory gloss applicable to other crimes.

In his brief, the defendant has failed to identify any ambiguity with respect to the crimes of home invasion and criminal violation of a protective order to warrant application of the judicial gloss identified by our Supreme Court in *Salamon*. Moreover, as the state points out, an element of the crime of home invasion requires that the state prove that the defendant committed or attempted to commit a felony against a nonparticipant in the crime who is present in the dwelling. In other words, the home invasion statute contemplates the commission of another felony against the nonparticipant in the dwelling during the unlawful entry. *Salamon* and its judicial gloss do not apply to the crime of home invasion, and therefore the defendant's claim fails.

## II

The defendant's second claim is that there is insufficient evidence to support his conviction of (1) burglary in the first degree and (2) home invasion. We do not agree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 65, 43 A.3d 629 (2012).

An appellate court may not second-guess a jury's credibility determinations. See *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). In reviewing the evidence, "the reviewing court [is] bound by the jury's credibility determinations and all *reasonable* inferences the jury could have drawn from the evidence." (Emphasis in original.) *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 290, 32 A.3d 318 (2011).

### A

### Burglary in the First Degree

In count one of the amended long form information, the state accused the defendant of burglary in the first degree and charged that in "Norwalk *on or about* April 30, 2010, at approximately 7:08 p.m. in the area of Maple Street, [the defendant], unlawfully entered a building with intent to commit a crime therein and in the course of committing the offense, recklessly inflicted bodily injury to [Planeta] in violation of General Statutes § 53-101 (a) (2)." (Emphasis added.)

Section 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when . . . (2) such person enters or remains unlawfully in a building with intent to commit a crime therein and, in the course of committing the offense, intentionally, knowingly or recklessly inflicts or attempts to inflict bodily

injury on anyone . . . . (c) Burglary in the first degree is a class B felony . . . .''

After the reviewing the evidence presented in this case, we conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant entered the building illegally. The building was a secured building requiring a special key that had to be obtained from the building superintendent. According to the superintendent, Alan Raymond, the defendant was not a resident of the building on April 29, 2010, when he was observed by a security camera sneaking into the building when someone exited. The April 26, 2010 protective order required that the defendant stay away from Planeta's home and wherever she resided. Moreover, the jury reasonably could have found that the defendant intended to violate the protective order and, during the course of that crime, he struggled with Planeta and recklessly caused injury to her arm, lip, and little finger.

The defendant argues that the amended long form information charges that his unlawful entry took place on April 30, 2010, and the evidence adduced at trial indicates that he entered the building on April 29, 2010. The defendant's argument is unavailing. ''[I]t is a well-established rule in this state that it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the statute of limitations.'' (Internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 552, 498 A.2d 76 (1985).

A defendant is ''bound to meet any evidence admissible under the allegation which might be offered, and under the allegation it was competent to prove that the crime was committed on any day prior to the filing of the information and within the statute of limitations.'' *State* v. *Ferris*, 81 Conn. 97, 99–100, 70 A. 587 (1908). Moreover, the amended long form information alleged that the unlawful conduct occurred ''on or about April 30, 2010.'' The defendant cannot prevail on his claim that the state presented insufficient evidence to convict him of burglary in the first degree.

## B

### Home Invasion

Count two of the amended long form information accused the defendant of home invasion and charged that in Norwalk ''on or about April 30, 2010, at approximately 7:08 p.m. in the area of Maple Street, the [defendant] unlawfully entered a dwelling, with intent to commit a crime therein, while a person other than a participant in the crime was actually present in such dwelling, to wit . . . Planeta, and, in the course of com-

mitting the offense he attempted to commit a felony against another person who was actually present in such dwelling in violation of . . . § 53a-100aa (a) (1)."

Section 53a-100aa provides in relevant part: "(a) A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and in the course of committing the offense; (1) Acting either alone or with one or more persons, such person . . . commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . . (c) Home invasion is a class A felony . . . ."

On the basis of our review of the evidence, we conclude that there was sufficient evidence presented at trial for the jury reasonably to have found beyond a reasonable doubt that the defendant unlawfully entered Planeta's apartment or dwelling after he struggled with her and pushed her into the apartment. Given the evidence of the defendant's conduct, the jury reasonably could have found that in entering the apartment he intended to violate the protective order and to obtain money from Planeta by use of force, if necessary. The defendant brandished a facsimile firearm, which supports a reasonable inference that he intended to use force and commit a crime. The jury also reasonably could have found that the defendant violated the protective order by entering Planeta's apartment, a felony. See General Statutes § 53a-223.

Although the jury found the defendant not guilty of attempt to commit robbery, it reasonably could have found that the defendant not only intended, but also attempted, to commit a robbery in Planeta's apartment. He brandished the facsimile of a gun to compel Planeta to walk down the hall from the laundry room to the elevator after he stated that he wanted her to give him $3500. "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (2) compelling the owner of such property . . . to deliver up the property or to engage in other conduct which aids in the commission of the larceny." General Statutes § 53a-133. Robbery, regardless of degree, is a felony. See General Statutes §§ 53a-134 (b), 53a-135 (b) and 53a-136 (b). We, therefore, conclude that there was sufficient evidence by which the jury reasonably could have found the defendant guilty of home invasion.

III

The defendant also claims that the court improperly instructed the jury with respect to home invasion and thereby misled the jury. We disagree.

In count two of the amended long form information, the state accused the defendant of home invasion and charged that "at the city of Norwalk on or about April 30, 2010, at approximately 7:08 p.m. in the area of Maple Street, [the defendant] unlawfully entered a dwelling, with intent to commit a crime therein, while a person other than a participant in the crime was actually present in such dwelling, to wit . . . Planeta, and, in the course of committing the offense he attempted to commit a felony against another person who was actually present in such dwelling in violation of . . . § 53a-100aa (a) (1)."

Section 53a-100aa (a) provides in relevant part: "A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is *actually present in such dwelling*, with intent to commit a crime therein, and, in the course of committing the offense: (1) Acting . . . alone . . . such person . . . commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . ." (Emphasis added.)

The defendant submitted a request to charge on December 5, 2011, and an amended request to charge on December 7, 2011. With respect to the charge of home invasion, the defendant requested that the court instruct the jury, in part: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. . . . The first element is that the defendant knowingly and unlawfully entered a dwelling *while the dwelling was occupied*." (Emphasis in original.)

On December 7, 2011, the court provided the parties with a copy of its proposed charge and heard argument on the defendant's requested charge. The court denied the defendant's request and instructed the jury in relevant part: "The defendant is charged in count two with home invasion. . . . The first element is that the defendant knowingly and unlawfully entered a dwelling. . . . The second element is that the defendant specifically intended to commit a crime in that dwelling. . . . The third element is that *when the defendant entered the dwelling*, a person other than a participant in the crime *was actually present in the dwelling*. . . . The fourth element is that in the course of committing the offense, the defendant committed or attempted to commit a felony against the person of another person other than a participant in the crime *who was actually present in such dwelling*. . . . In summary, the state must prove beyond a reasonable doubt that the defendant knowingly and unlawfully entered a dwelling and that he specifically intended to commit a crime in the dwelling, and that another person other than a participant of the crime was *actually present in the dwelling*."[7] (Empha-

sis added.)

"Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension . . . that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454–55, 10 A.3d 942 (2011).

Our review of the court's charge reveals that the court accurately stated the applicable law, which was adapted to the issues in this case. In any event, we discern no material difference between the court's charge and the language contained in the defendant's request to charge. We conclude, therefore, that it was not reasonably possible that the court's instructions regarding home invasion misled the jury.

IV

The defendant last claims that the court abused its discretion by denying his oral motion for a judgment of acquittal offered following the presentation of all the evidence. He also claims that the court improperly denied his written motion to dismiss filed prior to trial.[8] The substance of the defendant's claim is that the court applied the incorrect standard when ruling on the motions, and that the evidence would not reasonably permit a finding of guilty as to home invasion and burglary in the first degree. We see no merit in the defendant's claim.

On December 7, 2011, following the conclusion of evidence, the court, in ruling on the defendant's motion for a judgment of acquittal stated, in part: "And with respect to all of the charges—at this point, I'll leave out the home invasion charge—the court finds that there is sufficient evidence for all of those charges to go to the jury." The court then discussed the legislative history of the home invasion statute and stated that the elements of the home invasion statute were clear to the court, and that the statute is distinguishable from the burglary statute. The court concluded: "And based upon my reading of the statute, the motion for judgment

of acquittal with respect to that count is also denied considering the evidence that has been presented. I think there is sufficient evidence for that matter to be considered by the jury."

The defendant claims that the court improperly applied a sufficiency of the evidence standard when ruling on his motions to dismiss and for judgment of acquittal. Practice Book § 42-40, entitled "Motions for Judgment of Acquittal; In General," provides in relevant part: "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant . . . the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged . . . for which the evidence would not reasonably permit a finding of guilty. . . ." On the basis of our review of the court's ruling on the defendant's motions, we conclude that the court applied the proper standard of review by concluding that there was sufficient evidence presented by the state to submit the charges against the defendant to the jury.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The superintendent for the building described it as a "secure building," meaning that a nonresident seeking to enter had to page a resident to gain entry.

[2] The jury found the defendant not guilty of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), and assault in the third degree in violation of General Statutes § 53a-61 (a) (1).

[3] The defendant failed to provide a separate analysis of his claims under the constitution of Connecticut. We therefore decline to review those claims. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[4] The parties disagree as to whether the defendant's claims, as articulated in his brief, were preserved for review. We need not determine whether the claims were preserved. The state points out that, in his motion to dismiss filed prior to trial, the defendant stated that "[t]here is insufficient evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial on count two of the information." The state concedes that to the extent that the defendant's claims challenge the sufficiency of the evidence, they are reviewable. We agree and review the defendant's claims only for the sufficiency of evidence. See *State* v. *Rodriguez-Roman*, 297 Conn. 66, 73, 3 A.3d 783 (2010) (defendant found guilty on basis of insufficient evidence has been deprived of constitutional right).

[5] In his brief, the defendant refers to § 54-1k, which is entitled "Issuance of protective orders in cases of stalking, harassment, sexual assault, risk of injury to or impairing morals of a child." The state has countered that the subject protective order was issued pursuant to General Statutes § 46b-38c, entitled "Family violence response and intervention units. Local units. Duties and functions. Protective orders. Electronic monitoring pilot program. Pretrial family violence education program; fees. Training program." In the present case, the statute under which the protective order was issued is not determinative, as the quoted language concerning criminal trespass is contained in both §§ 54-1k (b) and 46b-38c (e).

[6] In his brief, the defendant raised a right to privacy claim and also states that "the state necessarily considered him to be a 'homeless' person, when it claimed he had 'no fixed address,' and was 'squatting' there [in the basement]. Even as a 'homeless' 'squatter,' however, the defendant still retained his Constitutional rights, including the right not to be punished unless warranted by law. That's because it is the policy of the state to protect the Constitutional rights of homeless people, and that policy necessarily includes the right not to be convicted for 'home invasion' when the 'home' invaded was his 'home,' however temporary." In order to resolve the defendant's claim, it is unnecessary for us to determine whether the basement of the building was the

defendant's claimed home. The defendant's conviction of home invasion was predicated on his entering Planeta's apartment or dwelling.

[7] The court also instructed the jury, in part, that "[a]s a matter of law, violation of a protective order and attempt to commit robbery in the first degree are both felonies."

[8] The court heard argument on the defendant's motions and denied them at the conclusion of evidence.

[9] We feel constrained to express our disapproval of inappropriate and intemperate language contained in the conclusion of the defendant's principal brief, which amounts to a wholesale ad hominem attack on the trial court. In contending that the court abused its discretion by ruling as it did in a number of ways, appellate counsel stated in part: "Basically, the trial court didn't do its job. The judge failed to conduct appropriate research into the law, or legislative history, before deciding on the motions. . . . This is not justice. This is not what a court is required to do. . . . A judge is supposed to view the evidence with fairness, know or find out what the law requires, to apply the facts to the law, to come up with a just decision. That didn't happen here. . . . Without judicial diligence, the system fails, not just for one individual, but also for society as a whole. That diligence did not happen here. The law was not known or understood, the facts were not applied appropriately to the law, and the standards of review were not followed." (Citations omitted.)

Issues properly raised on appeal are to be based on claims of law presented at trial, not the personal opinion of appellate counsel. Such remarks are unseemly and do nothing whatever to advance the defendant's claims and arguments. In our view, as indicated in this opinion, the trial court properly ruled on the matters before it.

---